# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**HOBBY LOBBY STORES, INC.,**
**Employer Below, Petitioner**

**FILED**
**May 23, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-485**      (JCN: 2021012447)

**TRACIE L. FORD,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Hobby Lobby Stores, Inc. ("Hobby Lobby") appeals the October 5, 2023, decision of the Workers' Compensation Board of Review ("Board"). Respondent Tracie Ford timely filed a response.[1] Hobby Lobby filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order and approving the request for right shoulder arthroscopy with rotator cuff repair and tenodesis of long tendon of biceps.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December 2020, Ms. Ford was employed as the head of the floral department at Hobby Lobby. Ms. Ford completed an Employees' and Physicians' Report of Occupational Injury form on December 18, 2020, in which she stated that as she was coming down a ladder, missed the last two steps, and fell on her right side while at work on December 14, 2020. Ms. Ford was unable to finish her shift and went to MedExpress that day for treatment. Ms. Ford indicated on the form that she previously had rotator cuff surgery on the right shoulder in March of 2020. A report of Naresh Nayak, M.D., dated September 30, 2020, noted that although Ms. Ford had a prior history of surgery on her right shoulder, after that surgery she made a full recovery and exhibited full and painless range of motion in all planes.

---

[1] Hobby Lobby is represented by Tracey Eberling, Esq. Ms. Ford is represented by Christopher J. Wallace, Esq.

On December 18, 2020, Ms. Ford was treated by David Beane, M.D. at MedExpress. Ms. Ford reported right shoulder pain and stated that she had a right rotator cuff repair in March of 2020, which was performed by Dr. Nayak. A right shoulder x-ray revealed no acute bone abnormality or significant degenerative disease. Dr. Beane's diagnosis was unspecified sprain of right shoulder joint.

Based upon the evidence, the claim administrator issued an order dated January 14, 2021, which held the claim compensable for right shoulder sprain. Ms. Ford returned to MedExpress on January 5, 2021, for a follow-up of the right shoulder injury. She reported that she was still in constant pain. An MRI performed on January 19, 2021, indicated: status post previous right shoulder surgery with reported rotator cuff repair, large recurrent full thickness, and nearly complete tear of the supraspinatus tendon although several thin fibers appeared intact. There was no definite retraction, no acute fracture or labral tear, and mild degenerative changes to the AC joint.

Ms. Ford was seen by Dr. Nayak on January 28, 2021. Ms. Ford complained of continual locking pain in the right shoulder, and severe pain when moving her shoulder. Dr. Nayak's assessment was strain of the right rotator cuff and rotator cuff tear at the supraspinatus tendon, which he opined was the result of a work-related injury. Dr. Nayak noted that Ms. Ford had returned to work, but that she shifted to light duty with no lifting over six pounds. Dr. Nayak recommended surgical repair of the rotator cuff tear to prevent it from retracting or atrophying.

On February 25, 2021, the claim administrator issued an order authorizing right rotator cuff surgery as requested by Dr. Nayak. Dr. Nayak performed an open right shoulder rotator cuff repair with acromioplasty on March 15, 2021. The pre-operative diagnosis was rotator cuff tear, acute traumatic tear of the right shoulder. Dr. Nayek instructed that Ms. Ford was to remain off of work until the rotator cuff healed.

Ms. Ford returned to Dr. Nayek on October 7, 2021. At the time of her visit, she was not working. Ms. Ford complained of sharp pain in her right shoulder and stated that she had been going to physical therapy. Dr. Nayek ordered an MRI of the right shoulder to make sure that there were no recurrent tears.

A right shoulder MRI performed on October 25, 2021, indicated the following: postoperative changes related to prior rotator cuff repair; a localized approximately 8 by 8 mm shallow articular surface tearing versus fraying of the middle one-third supraspinatus of fibers involving 10% of the thickness; mild subacromial/subdeltoid bursal inflammation; and an intact long head biceps tendon. Ms. Ford returned to Dr. Nayak on October 28, 2021. Dr. Nayak noted that the range of motion had improved in her right shoulder, but that Ms. Ford still had decreased strength and pain when moving her shoulder.

Paul Bachwitt, M.D., performed an independent medical evaluation ("IME") of Ms. Ford on December 6, 2021. Dr. Bachwitt found that the diagnosis of right shoulder rotator cuff tear status post right shoulder open rotator cuff repair and acromioplasty was properly stated and supported by objective findings. He noted that Ms. Ford had a non-work-related rotator cuff repair performed by Dr. Nayak in March of 2020. Dr. Bachwitt opined that Ms. Ford was status post right shoulder surgery, that she needed additional physical therapy, and that she had not reached maximum medical improvement ("MMI"). He noted that her medical services, treatments, and diagnostics had been medically necessary and related to the December 14, 2020, work injury. Dr. Bachwitt stated that Ms. Ford should remain off of work until she completed six more weeks of physical therapy.

On July 27, 2022, David Soulsby, M.D., performed an additional IME of Ms. Ford. Dr. Soulsby's assessment was recurrent tear of the rotator cuff in the right shoulder. Dr. Soulsby opined that the medical documentation supported a causal relationship between the December 14, 2020, work incident and Ms. Ford's injury. Dr. Soulsby noted that Ms. Ford's progress had been significantly slower than normal under the circumstances because this was a recurrent rotator cuff tear, and that it is reasonable to expect a slower recovery after a revision operation. Dr. Soulsby did not recommend further treatment but recommended a repeat MRI of the right shoulder to reassess the functional status of the rotator cuff repair. Dr. Soulsby opined that further treatment required for Ms. Ford's shoulder could be projected after the results of the MRI were known, and that if the MRI demonstrated that the rotator cuff repair was intact, then Ms. Ford's right shoulder would be at MMI.

A right shoulder MRI was performed on September 7, 2022. The MRI revealed postoperative changes related to the prior rotator cuff repair. There was a small area of shallow tearing of relative proximal fibers of the middle one third of the supraspinatus occurring at the level of the undersurface of the acromion, as well as status post anterior acromioplasty. There was mild subacromial/subdeltoid bursal summation. Further, the long head of the biceps tendon was intact.

Ms. Ford returned to Dr. Nayak on September 9, 2022, following the MRI. Dr. Nayak's assessment was strain of the muscle(s) and tendon(s) of the rotator cuff of the right shoulder. He stated that he reviewed the September 7, 2022, MRI, and there was a shallow tear in the proximal fibers of the middle one-third of the supraspinatus occurring at the undersurface of the acromion. He stated that the tear involved around 30%. Dr. Nayak noted that he was unsure whether a diagnostic arthroscopy would help, and that Ms. Ford was evaluated by a workers' compensation medical evaluator who questioned whether a tendon transplant or transfer would help with Ms. Ford's pain. Dr. Nayak referred Ms. Ford to Adam C. Domico, M.D., who has experience with tendon transfers and transplants.

On September 13, 2022, Ms. Ford was seen by Dr. Domico. Ms. Ford reported mostly anterior shoulder pain, which she said was slightly different from her rotator cuff

repair pain. Dr. Domico stated that the previous MRI films were reviewed and demonstrated a possible re-tear. Dr. Domico's recommendation was a referral for an ultrasound-guided steroid injection into the long head of the biceps tendon. He opined that if the biceps tendon was causing Ms. Ford's pain, he would suggest an arthroscopic debridement, tenotomy, and biceps tenodesis. Dr. Domico further stated that if this was not the source of her pain, he would try to narrow it down to possibly her AC joint, which was tender on exam as well.

The claim administrator issued an order dated October 3, 2022, which approved a right biceps injection with ultrasound as requested by Dr. Domico. Ms. Ford returned to Dr. Domico on October 13, 2022. Dr. Domico stated that a limited diagnostic ultrasound was performed, and that he was able to identify her rotator cuff, which appeared to be intact at the greater tuberosity. He was able to detect the bicipital groove, but there was no significant edema at the time of the ultrasound. Dr. Domico noted tenderness to palpation over the biceps tendon proximally, and mild tenderness to palpation at the AC joint. Dr. Domico administered a diagnostic/therapeutic corticosteroid injection in the proximal biceps tendon sheath, which appeared to be the area with the most tenderness. On November 3, 2022, Ms. Ford returned to Dr. Domico and reported that for a few days after the corticosteroid injection, she had significant anterior shoulder pain relief, but after that, her shoulder pain returned to baseline. Ms. Ford also complained of muscle cramping that radiates into the biceps, which Dr. Domico diagnosed as biceps tendinitis of the right shoulder. He stated that the fact that Ms. Ford had a positive response to the injection was a good indicator that treatment at the biceps tendon would help alleviate at least some of Ms. Ford's shoulder pain. Thus, Dr. Domico recommended a diagnostic shoulder arthroscopy, followed by open biceps tenodesis if there is no evidence of a rotator cuff tear. If there is evidence of a rotator cuff tear, Dr. Domico suggested a revision rotator cuff repair.

On November 7, 2022, Dr. Domico requested authorization for a right shoulder arthroscopy with rotator cuff repair and right shoulder tenodesis of the long tendon of bicep.

Michael Hay, M.D., drafted a peer review report dated December 14, 2022, regarding Dr. Domico's request for authorization of right shoulder arthroscopy with rotator cuff repair and right shoulder tenodesis of long tendon biceps. Dr. Hay stated that he contacted Dr. Domico and discussed the case, and Dr. Domico confirmed that there did not appear to be any pathology in the biceps tendon although he felt the majority of the claimant's pain was anterior and therefore related to the tendon. Dr. Hay opined that based on the MRI that showed a normal biceps and a rotator cuff that appeared to have post-operative changes, the request for right shoulder arthroscopy with rotator cuff repair and right shoulder tenodesis of the long tendon of biceps was not medically necessary and did not meet West Virginia or Occupational Disability Guidelines. Also on December 14, 2022, the claim administrator denied authorization for the right shoulder arthroscopy with

4

rotator cuff repair and right shoulder tenodesis of the long tendon of the biceps, based on Dr. Hay's report that these procedures did not meet established treatment standards of medical necessity.

Ms. Ford followed-up with Dr. Domico on February 16, 2023. Dr. Domico noted that he had requested a shoulder scope with possible rotator cuff repair and open biceps tenodesis, but that these procedures were not approved by the claim administrator. Ms. Ford presented for evaluation through her private health insurance as the treatment was not approved by the claim administrator. Dr. Domico noted that Ms. Ford's symptoms were relatively unchanged from her previous visit. Dr. Domico stated that Ms. Ford had undergone extensive nonoperative measures for the conditions and that she had exhausted her nonoperative measures. Thus, he recommended a shoulder arthroscopy with possible rotator cuff repair and open biceps tenodesis.

By order dated October 5, 2023, the Board reversed the claim administrator's order and approved Dr. Domico's request for right shoulder arthroscopy with rotator cuff repair and tenodesis of long tendon biceps. The Board found that Dr. Hay's report was entitled to little or no weight based on the lack of analysis and brevity of the report, the incorrect statements made in the report, including his incorrect statement that the claimant had no permanent restrictions in her right shoulder, and the failure to cite any specific guidelines from West Virginia or ODG guidelines to support his opinion. Further, the Board found that the fact that Dr. Nayak referred Ms. Ford does not support a finding that he did not believe surgery was a reasonable or necessary treatment. The Board found that the medical evidence documenting Ms. Ford's continued complaints related to the right shoulder, Dr. Nayek's treatment records, and reports from Dr. Bachwitt and Dr. Soulsby, as well as Dr. Domico's medical opinion that right shoulder surgery may alleviate at least some of the right shoulder symptoms, established that the requested right shoulder surgery is a reasonable and necessary treatment for the December 14, 2020, compensable injury. It is from this order that Hobby Lobby now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;

5

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Hobby Lobby raises a single assignment of error, in which it argues that the Board erred in reversing the claim administrator's order and authorizing Ms. Ford's request for right shoulder surgery to address the biceps tendon which was not compensable in the claim. In support of this assignment of error Hobby Lobby argues that the Board erred in concluding that the medical evidence supported additional surgery, because Dr. Bachwitt, Dr. Soulsby, and Dr. Nayak did not request an additional procedure. Further, Hobby Lobby argues that the Board was improperly critical of Dr. Hay's peer review report. We disagree.

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order and approving Dr. Domico's request for right shoulder arthroscopy with rotator cuff repair and tenodesis of long tendon of biceps. West Virginia Code § 23-4-3 (2005) and West Virginia Code of State Rules § 85-20 (2006) provide that the claim administrator must provide medically related and reasonably necessary treatment for a compensable injury.

Upon review, the medical evidence in the record supports the Board's conclusion that the requested surgery is a reasonable and necessary treatment for the compensable injury of December 14, 2020. The record establishes that Ms. Ford suffered from continual pain in the right shoulder following the compensable injury, as evidenced by Dr. Nayak's treatment records, the reports from Dr. Bachwitt and Dr. Soulsby, and Dr. Domico's opinion that right shoulder surgery may alleviate some of Ms. Ford's symptoms. As noted in Ms. Ford's brief, the claim administrator authorized earlier treatment, in the form of an injection to the right biceps tendon, which indicates that the claim administrator had accepted the fact that the biceps pathology is related to the compensable injury. *See Best Buy v. Parrish*, No. 15-1153, 2016 WL 7105264, at *2 (W. Va. Ct. App. Dec. 6, 2016) (memorandum decision). Further, the Board found that the fact that Dr. Nayak referred Ms. Ford for a second opinion because he was unsure as to whether surgery would help her symptoms did not establish that he did not believe that surgery was reasonable and necessary treatment.

The Board also found that Dr. Hay's opinion was entitled to little weight based on the lack of analysis in the brief report, incorrect statements made in the report, and the lack

6

of citations to West Virginia guidelines or ODG Guidelines. A review of the record establishes that the Board did not err in determining that, due to several inconsistencies regarding Ms. Ford's restrictions and the number of prior rotator cuff surgeries that she had undergone, Dr. Hay's report lacked credibility. Based on the foregoing, we conclude that the Board was not clearly wrong in finding that Dr. Hay's report was entitled to little weight. The Board relied on the substantial medical evidence in finding that Ms. Ford's request for right shoulder arthroscopy with rotator cuff repair and tenodesis of long tendon of biceps should be approved. Based on the foregoing, we conclude that the Board was not clearly wrong in finding that the requested surgery is reasonably and necessary treatment for the compensable injury of December 14, 2020.

Accordingly, we affirm the Board's October 5, 2023, order.

Affirmed.

**ISSUED:** May 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear